# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

March 11, 2019

To:
Shig Yasunaga
UNITED STATES DISTRICT COURT
Central District of Illinois
U.S. Courthouse
Urbana , IL 61802-3369

| No. 18-1411 | FRAN WATKINS,<br>Plaintiff - Appellant<br><br>v.<br><br>RIVERSIDE MEDICAL CENTER, et al.,<br> Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:16-cv-02252-CSB-EIL<br>Central District of Illinois<br>District Judge Colin S. Bruce ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:    No record to be returned

NOTE TO COUNSEL:

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

------------------------------------

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                                      **Received by:**

3/11/2019                                                      s/T. CRONK
_____                        _____

form name: **c7_Mandate**(form ID: **135**)

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2019
Decided February 15, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*



| | |
|---|---|
| No. 18-1411 | |
| FRAN WATKINS,<br>  *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 2:16-cv-02252-CSB-EIL |
| RIVERSIDE MEDICAL CENTER and<br>RIVERSIDE SENIOR LIVING CENTER,<br>  *Defendants-Appellees*. | Colin S. Bruce,<br>*Judge*. |

**O R D E R**

Fran Watkins sued her former employer, Riverside Medical Center, for violating Title VII of the Civil Rights Act of 1964. The district court entered summary judgment for the defendants, deciding that no reasonable jury could find that Watkins's workplace was racially hostile or that she was fired because of her race. We affirm the district court's judgment.

Watkins, who is black, began working at Riverside, a senior living facility, in 2008. Her duties included assisting residents with daily activities, such as eating and hygiene.

In early October 2014, Watkins was walking with a resident to the dining area when the resident became agitated and tried to pull her arm away from Watkins. To prevent the resident from falling backwards, Watkins kept hold of the resident's arm. A coworker, Virginia Perhach, heard the commotion, came into the hallway, and asked Watkins if she needed any help escorting the resident. Watkins said yes, and Perhach escorted the resident away.

Either Perhach or another employee reported the incident to Watkins's supervisor, Diane Marek. In response, Marek interviewed Perhach and watched video footage of the incident. Marek also interviewed another employee, Nicole Rzyski, who told Marek that she had recently heard Watkins in a different resident's room using an aggressive voice to get the resident to change clothes. Based on these allegations, Marek decided to investigate Watkins for potential resident abuse and suspended Watkins pending the results. Riverside's Abuse and Neglect Policy prohibits physical abuse and mental injury to residents. Employees that violate the policy can be terminated.

As part of the investigation, Marek reviewed Watkins's personnel file and discovered that Watkins had previously been investigated for improperly handling a resident. Watkins's supervisors allegedly had spoken with her about the incident and reminded her about the importance of adhering to the abuse policy, though Watkins denies that she did anything improper or that her supervisors had discussed the incident with her. Watkins's file also contained three corrective action reports that she had received for inadequate job performance, such as for failing to dispense medication.

Marek also had Nora O'Gorman, an administrator, assist with the investigation. O'Gorman interviewed Perhach and two other employees about incidents during which they allegedly witnessed Watkins being abusive. Perhach, Rzyski, and the two other employees also provided handwritten statements. O'Gorman compiled the interviews, handwritten statements, and her findings into a report for Marek to review.

Marek found O'Gorman's report, along with the interviews and written statements of various employees, trustworthy. Based on the interviews, statements, and the other incidents, Marek concluded that Watkins had violated Riverside's Abuse and Neglect Policy and that it would be in the residents' best interests if Watkins no longer worked at Riverside. She terminated Watkins's employment.

No. 17-1728                                                                                         Page 3

Watkins filed a charge of race discrimination with the Equal Employment Opportunity Commission, which eventually dismissed the charge and gave notice of her right to sue. Watkins then filed a complaint in district court, alleging a racially hostile work environment[1] and wrongful termination based on race in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* She claimed that because she had not been abusive towards residents and that the video of the resident pulling her arm away did not show otherwise, she had been fired because she was black. She also asserted that her work environment was racially hostile because Marek had repeatedly called her "trouble" and frequently asked if she was "staying out of trouble."

To support her claim of race discrimination, Watkins pointed to white coworkers who had violated Riverside's Abuse and Neglect Policy but had not been fired. Two such "comparator" employees, Natalie Mesewicz and Lorely Taylor, had been accused of patient abuse. Chelsea Smothers made a medication error. And Ashley Whitaker had been reported for not changing residents' soiled garments.

The defendants moved for summary judgment, arguing that Marek had not created a racially hostile work environment and that Watkins was not fired because of her race. The district court granted the motion, first deciding that there was insufficient evidence to permit a reasonable factfinder to conclude that Marek fired Watkins because of her race rather than for Watkins's violations of Riverside's policy. The court next determined that Watkins had failed to show that any similarly situated employees who were not black were treated better than Watkins. The court finally concluded that, while Marek's "trouble" comments were frequent and perceived by Watkins as offensive, the evidence was insufficient to show a workplace so permeated with discrimination that would alter the conditions of employment and create an abusive working environment.

On appeal, Watkins first argues that she produced evidence that Marek fired her because of her race sufficient to survive summary judgment. Watkins invokes the framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), which requires her to provide evidence that: (1) she is a member of a protected class; (2) she

---

[1] Watkins did not allege a hostile work environment in her administrative charge. But Riverside did not argue failure to exhaust, and although the failure appears plain, this court will affirm on any ground supported by the record *if* "it was adequately addressed below and the plaintiffs had an opportunity to contest the issue." *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018).

No. 17-1728 Page 4

was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee not in her protected class was treated more favorably. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). This court has emphasized that, although the *McDonnell Douglas* framework can focus the evidence, the ultimate inquiry is simply whether the evidence could permit a reasonable factfinder to conclude that the plaintiff's race caused her discharge. *Id.* at 224; *Ortiz v. Werner Enters.*, 834 F.3d 760, 765 (7th Cir. 2016).

Arguing that she made a prima facie showing of discriminatory discharge, Watkins first contends that she met Riverside's performance expectations because "there was absolutely no misconduct on [her part] in this incident; and therefore, she performed her job satisfactorily." By "this incident" her brief makes clear that she means keeping hold of the resident's arm to prevent the resident from falling—and her insistence that she did nothing wrong *at that time* underlies nearly every argument in her brief. But even if Watkins had performed her job satisfactorily when holding on to the agitated resident, that incident alone did not cause her firing. Instead, it provided the impetus for Marek's investigation into her performance. The interviews with employees who alleged that Watkins was abusive, their written statements that Watkins had abused residents on multiple occasions, and Watkins's prior violations of Riverside's policy, shed further light on Watkins's performance—and she does not dispute that.

Watkins also lacks adequate evidence that she was treated less favorably than similarly situated employees who are not black. Similarly situated employees must be directly comparable to Watkins in all material respects. *See Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016). "Employees typically are similarly situated if they had the same supervisor, were subject to the same employment standards, and engaged in similar conduct." *Majors v. General Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013).

None of Watkins's comparator employees was similarly situated to her. The investigation into Watkins disclosed numerous instances of abuse and error over a period of years. And while Mesewicz was indeed investigated for a single incident of alleged resident abuse, it was concluded that she had *accidentally* hit a resident's wheelchair against the door; she had not abused the resident. Regarding the claims that Taylor and Whitaker had abused or neglected residents, Marek was never informed of those allegations and was not in a position to impose discipline. Nor was Watkins similarly situated to Smothers, who made a medication error but had a different supervisor responsible for disciplining her. Thus, Watkins's claim that similarly situated

employees who were not black were treated differently fails "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Watkins fell short of making a prima facie case of discrimination under *McDonnell Douglas*.

More importantly, looking cumulatively at the evidence, a reasonable factfinder could not find that Watkins was fired because of her race. *See David*, 846 F.3d at 227. Other than the fact that she is black, Watkins offers no evidence from which a juror could infer that race played any role in Marek's decision to fire her. She provides nothing but speculation that Marek's review of the video, interpretation of the situation, and decision to open an investigation into her conduct, was racially motivated or a pretext to discriminate. Nor does she deny that Marek's investigation revealed that she had a history of allegations that she was physically and verbally abusive with residents, and that she had made medication errors. Watkins was an at-will employee and had certain rules for the performance of her job. She appeared to have failed to abide by those rules, and as a result was terminated. Considering all the evidence, a reasonable jury could not conclude that Watkins was terminated because of her race.

Watkins finally argues that she produced sufficient evidence to create a genuine issue of material fact that Riverside had a racially hostile work environment. Such an environment exists when an employee experiences harassment "based on" her race that is sufficiently severe or pervasive to alter the terms and conditions of employment. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016).

Watkins's only evidence that her work environment was racially hostile is that Marek frequently referred to her as having "trouble" and asked if she was staying out of trouble. In arguing that these remarks are "objectively offensive" because they imply laziness, she relies on a magazine article about the word "lazy"—a word that Marek never used—and an undergraduate paper that analyzes the stereotype of a "loud talking and trouble making" black character in the *Rush Hour* movie trilogy. But these obscure sources of questionable weight are not evidence of the work environment at Riverside and do not create any issue of material fact. Being called "trouble" does not show that Watkins's workplace was permeated with discriminatory intent, physically threatening, humiliating, or otherwise so severe as to be a hostile work environment. *See Boss v. Castro*, 816 F.3d 910, 920–21 (7th Cir. 2016); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *see also Cole*, 838 F.3d at 897 (calling black workers "worthless," without more, not race discrimination solely because they were black). Her

No. 17-1728 Page 6

sparse evidence could not lead a reasonable jury to conclude that she suffered from a hostile work environment.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

**CERTIFIED COPY**
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

February 15, 2019

Before:
DANIEL A. MANION, Circuit Judge
MICHAEL B. BRENNAN, Circuit Judge
MICHAEL Y. SCUDDER, Circuit Judge

| No. 18-1411 | FRAN WATKINS,<br>Plaintiff - Appellant<br><br>v.<br><br>RIVERSIDE MEDICAL CENTER and RIVERSIDE SENIOR LIVING CENTER,<br>Defendants - Appellees |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:16-cv-02252-CSB-EIL<br>Central District of Illinois<br>District Judge Colin S. Bruce | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)